## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                          **Case No. 3:18-cr-117-MCR**

**BRYAN A. HINES,**

_____/

## ORDER

Pending before the Court is Defendant Bryan A. Hines' Motion to Suppress

Evidence, ECF No. 20, to which the Government has responded, ECF No. 21.

Having fully considered the parties' submissions and the applicable law, the Court

finds that Hines' motion is due to be denied.[1]

Hines is charged in a one-count indictment with possession of a firearm by a

convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Hines seeks

suppression of the firearm and ammunition, arguing that the search of the residence

where the items were found was an unlawful search under the Fourth Amendment

due to the absence of probable cause. Alternatively, Hines argues that the firearm

and ammunition should be suppressed because they were outside the scope of search

warrant and were not otherwise recoverable under the plain view doctrine.

---

[1] The Court does not believe an evidentiary hearing is necessary for the resolution of this dispute.

**Background**

On July 5, 2018, Florida Circuit Judge Jennie Kinsey signed a warrant for law enforcement to search 7220 N. Palafox St. Apt. 10007, Pensacola, Florida, 32503 (the "Apartment"). At the time, Kamia Purifoy rented the Apartment, while Hines regularly stayed at the Apartment as an overnight guest. Judge Kinsey issued the warrant to search the Apartment based on an affidavit sworn to by Special Agent Matt Infinger of the Florida Department of Law Enforcement ("FDLE"). In the affidavit, Infinger outlined the following facts.

On June 20, 2018, Infinger, working undercover, arranged to buy one ounce of powder cocaine from Hines as part of a narcotics investigation. On June 21, 2018, Infinger met with Hines at the Tractor Supply on 9 Mile Road to purchase the cocaine. Hines arrived at the Tractor Supply in a red Chevrolet Malibu bearing Florida license tag GEM L08 (the "red Chevrolet Malibu") and sold Infinger a half ounce of cocaine for $700. On July 2, 2018, Infinger arranged to purchase more cocaine from Hines. On July 3, 2018, prior to Hines and Infinger's arranged meeting, law enforcement observed Hines drive the red Chevrolet Malibu to the apartment complex at 7220 N. Palafox Street and meet with an unknown black male at the front door of an apartment in building nine. Shortly thereafter, Hines arrived at the Tractor Supply on 9 Mile Road in the red Chevrolet Malibu with Purifoy, the registered

owner of the vehicle, in the passenger seat. There, Hines met with Infinger and sold him approximately three ounces of suspected cocaine for $3,000.[2] After the controlled purchase, law enforcement observed Hines return to the red Chevrolet Malibu and drive directly back to the Apartment with Purifoy. When they arrived, Hines and Purifoy exited the vehicle and walked into the Apartment together. In addition to describing the aforementioned facts, Infinger also noted in his affidavit that Hines had eight prior felony narcotics convictions.

Based on Infinger's affidavit, Judge Kinsey determined there was probable cause to search the Apartment and, therefore, issued the search warrant. The warrant provided law enforcement with the authority to search the Apartment for evidence relevant to the suspected narcotics violations. On July 10, 2018, immediately before the execution of the warrant, FDLE agents arrested Hines and detained Purifoy. Shortly thereafter, other law enforcement agents commenced execution of the search warrant and began to search the Apartment. During the search, officers seized a Kahr .45 caliber pistol with a tempered serial number ("the firearm"), plastic baggies, promethazine syrup, receipts, a Dollar General grocery bag containing white powder, pink powder, a cell phone, and a spiral notebook. *See* ECF Nos. 20-3 at 1,

---

[2] Law enforcement later tested this powder and determined that it was not cocaine.

20-4. The firearm was found in the bedroom behind the television. The grocery bag that contained white powder was also found on this side of the bedroom. Around the same time the officers were executing the search warrant, Purifoy told other FDLE agents, in a recorded interview conducted while she was detained, that Hines regularly spent the night at the Apartment and that he kept his belongings on the side of bedroom with the television.

On July 13, 2018, Infringer obtained a warrant for Hines' DNA and, on July 27, 2018, a FLDE Crime Laboratory Analyst found that Hines was a possible contributor to the mixed DNA found on the firearm. Hines was subsequently charged with the instant offense.

**Discussion**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. For a search warrant to be valid under Fourth Amendment principles, it must be supported by probable cause, which means that there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Tate*, 586 F.3d 936, 942–43 (11th Cir. 2009) (internal quotations omitted)*, cert. denied*, 562 U.S. 1079 (2010). As the term implies, "probable cause" deals with probabilities and practical considerations, not technical

precision. *Illinois v. Gates*, 462 U.S. 213, 231 (1983). Courts decide the question of probable cause by considering the totality of the circumstances through "the practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* This practical, common-sense determination requires the issuing magistrate to consider the affidavit "in light of all the circumstances set forth," "including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Id.* at 238. The search warrant affidavit must contain "facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). The contents of the affidavit are evaluated to determine whether there is a connection between the defendant and the residence to be searched, as well as a link between the residence and the suspected criminal activity. *See id.* Notably, courts "afford great deference to judicial determination of probable cause to issue a search warrant." *United States v. Robinson*, 62 F.3d 1325, 1331 (11th Cir. 1995). Furthermore, "a presumption of validity" attaches to an affidavit supporting a search warrant. *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

Hines argues that there was not probable cause for the search because Infinger's affidavit lacked sufficient facts establishing a connection between Hines and the Apartment. The Court disagrees. Here, there was sufficient evidence in the

Case No. 3:18-cr-117-MCR

affidavit connecting Hines and the suspected criminal activity to the Apartment. *See*

*Martin*, 297 F.3d at 1314. The affidavit established that Purifoy owned the red

Chevrolet Malibu and that she was a tenant at the Apartment. Notably, Hines drove

Purifoy's red Chevrolet Malibu to both controlled buys. In addition, law

enforcement observed Hines leave the apartment complex in the red Chevrolet

Malibu, after meeting with an unknown black male, immediately before driving to

the second controlled buy. Furthermore, Hines and Purifoy arrived at the second

controlled buy in the red Chevrolet Malibu together, and they were observed driving

directly back to the Apartment and walking into the Apartment after the buy. Based

on the foregoing, there was sufficient nexus between Hines, the Apartment, and the

suspected criminal activity to support the finding of probable cause.[3] *See*

*United States v. Jenkins*, 901 F.2d 1075, 1080 (11th Cir. 1990) ("[T]he nexus

---

[3] In his reply, Hines argues that statements in the affidavit indicating that Hines lived at the Apartment were misleading and conclusory and that these statements "likely effected the judicial determination of probable cause." ECF No. 24 at 3. The Court disagrees. Infinger could have reasonably inferred that Hines resided at the Apartment because Purifoy was a tenant, Hines was seen driving Purifoy's car on multiple occasions, and Hines was seen driving with Purifoy and entering the Apartment together. *See United States v. Jiminez*, 224 F.3d 1243, 1248 (11th Cir. 2000) (noting that courts should "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." (quoting *Ornelas v. United States*, 517 U.S. 690, 699 (1996)) (internal quotation marks omitted)). Nevertheless, even excluding these facts, the Court finds the affidavit sufficient to support a finding of probable cause. *See id.* at 1247 (finding that the warrant affidavit supported a finding of probable cause, although there were no facts in the affidavit establishing that the defendant lived in the house, when there were other facts linking the defendant's illegal activity to the house).

between the objects to be seized and the premises searched can be established from the particular circumstances involved and need not rest on direct observation."); *cf.* *United States v. Ellison*, 632 F.3d 347, 349–50 (6th Cir. 2011) (finding probable cause where a confidential informant had observed participants to a drug deal coming out of or returning to the house searched). In addition, the state circuit judge was entitled to credit Infringer's conclusion that the $3,000 from the controlled purchase and other illegal narcotics would likely be found in the Apartment based on his background and experience, the officers' observations of Hines, and Hines' prior felony narcotics convictions. *See United States v. Robinson*, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995) ("Opinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation for issuing a search warrant." (quoting *United States v. Motz*, 936 F.2d 1021, 1024 (9th Cir. 1991)) (internal quotation marks and alterations omitted)). Thus, the totality of circumstances raised a fair probability that evidence or contraband related to drug dealing activities would be found at the Apartment. *See Martin*, 297 F.3d at 1314. Therefore, the Court concludes that the search warrant was valid.[4]

---

[4] Because the Court finds there was probable cause for the search, it declines to address the good faith exception. *See United States v. Leon*, 468 U.S. 897, 922 (1984).

Hines also argues that the firearm should be suppressed because it was outside the scope of the search warrant and was not otherwise recoverable under the plain view doctrine. In order to prevent general, exploratory searches, the Fourth Amendment requires that search warrants particularly describe the things to be seized. *United States v. Khanani*, 502 F.3d 1281, 1289 (11th Cir. 2007). "If a search exceeds the scope of terms of a warrant, any subsequent seizure is unconstitutional." *United States v. Jackson*, 120 F.3d 1226, 1228 (11th Cir. 1997). The plain view doctrine, however, allows for the seizure of evidence not particularly described in a search warrant when "the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006) (quoting *Horton v. California*, 496 U.S. 128, 135 (1990)). Specifically, "under the plain view doctrine, the warrantless seizure of an item is permissible where '(1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent.'" *See United States v. Folk*, 754 F.3d 905, 911 (11th Cir. 2014) (quoting *Smith*, 459 F.3d at 1290). Here, the seizure of the firearm and ammunition was justified under the plain view doctrine.

Case No. 3:18-cr-117-MCR

First, the officers were lawfully located in a place from which the firearm could be plainly viewed, and they had a lawful right of access to the firearm. Pursuant to the search warrant, which was valid for the reasons discussed above, the officers "had the right to conduct a search as extensive as reasonably required to locate the items described in the warrant." *Folk*, 754 F.3d at 911 (quotations and citations omitted). The officers' authority to search for narcotics and other drug-related evidence described in the warrant clearly extended to the bedroom where the firearm was seized. Additionally, there is no dispute that the firearm, which was found behind the television in the bedroom, was in plain view. Therefore, the first prong of the plain view doctrine has been established.

Next, the incriminating character of the firearm was immediately apparent. The second prong of the plain view doctrine "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband." *Folk*, 754 F.3d at 912 (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)); *see also Smith*, 459 F.3d at 1290. "A firearm that reasonably appears to be in the possession of a convicted felon qualifies as contraband—and is therefore subject to seizure under the plain view doctrine." *Folk*, 754 F.3d at 912. Here, the officers were aware prior to the execution of the search warrant that Hines had prior felony narcotics convictions. Additionally, the officers were justified in

reasonably believing that the firearm belonged to Hines. Prior to the execution of the search warrant, law enforcement reasonably believed that Hines was a resident of the Apartment.[5] *See* ECF No. 20-2. Notably, the officers had reason to believe that Hines was either a resident or occupant of the Apartment based on the facts available to them at the time of the search. *See Folk*, 754 F.3d at 912. Specifically, the officers were aware that Purifoy was a tenant, that Hines was seen driving Purifoy's car on multiple occasions, that he was seen parking the car outside the apartment complex, and that he was seen driving with Purifoy and entering the Apartment with her.[6] The officers also had probable cause to believe that the gun was contraband because there was evidence that it was being possessed in furtherance of drug trafficking. *See* 18 U.S.C. § 924(c)(1)(A). Specifically, the gun's close proximity to the suspected

---

[5] As noted above, Infinger asserted that Hines lived at the Apartment in his search warrant affidavit. *See Jiminez*, 224 F.3d at 1248 (noting that courts should "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." (quoting *Ornelas*, 517 U.S. at 699) (internal quotation marks omitted)).

[6] It is not entirely clear if the officers executing the warrant were aware of Purifoy's statements, which she made in her recorded interview, that Hines regularly spent the night and that he kept his belongings on the side of the bedroom where the gun was found. *See* ECF No. 20 at 3. While this information would provide further reason for the officers to believe that the gun belonged to Hines, the Court need not resolve whether the officers were aware of this information because they otherwise had probable cause to believe the firearm was contraband. *See Folk*, 754 F.3d at 912*; Smith*, 459 F.3d at 1290.

illegal drugs, i.e., the grocery bag containing white powder,[7] ECF Nos. 20-3, 20-4, Hines' prior drug convictions, and the aforementioned facts connecting Hines *and* Purifoy to the Apartment and the controlled buys gave the officers probable cause to believe that the gun was being possessed in furtherance of drug trafficking. *See United States v. Rodriguez*, 711 F.3d 928, 936 (8th Cir.) (finding that the incriminating nature of the guns seized was immediately apparent because they were found next to drugs and drug-related equipment and because the officers were aware of the defendant's criminal record), *cert. denied*, 571 U.S. 1085 (2013); *see also United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990) (noting that firearms are tools of the drug trade).[8] Based on the foregoing, it was reasonable for the

---

[7] While it was later determined that the white powder was not an illegal narcotic, the officers, based on the facts available to them at the time, had reason to believe the white powder and, by extension, the firearm were contraband. *See Folk*, 754 F.3d at 912; *see also Fla. v. Harris*, 568 U.S. 237, 249 (2013) (courts do not evaluate probable cause in hindsight).

[8] The Eleventh Circuit has "recognized that firearms can be so connected to the sale of narcotics that their seizure is implicitly authorized by a warrant to search for narcotics." *See Folk*, 754 F.3d at 910. However, the Court in *Folk* expressed some reservations about applying this rule when the officer in that case believed the guns, a 12 gauge shotgun and a .30–.30 caliber rifle, were probably used for hunting, the defendant's drug transactions were small in scale, and the officers did not suspect that the defendant "was armed while he engaged in his drug transactions or that he was storing firearms in his residence." *Id.* The instant case is distinguishable from *Folk* because there is more evidence showing a connection between the firearm and the suspected sales of narcotics. Specifically, unlike *Folk*, there is no evidence indicating that the officers believed the .45 caliber pistol was likely used for hunting. Additionally, the gun in this case was found in close proximity to suspected illegal drugs. Nonetheless, the Court declines to address whether the search warrant implied authorization to seize the firearm because the seizure was valid under the plain view doctrine. *See id.*

officers to treat the firearm as contraband and to seize it under the plain view doctrine. *See Folk*, 754 F.3d at 912.

In sum, the Court concludes that: (1) there was probable cause to justify the issuance of the search warrant; and (2) that the firearm and ammunition were properly seized under the plain view doctrine. Accordingly, Defendant's Motion to Suppress Evidence, ECF No. 20, is **DENIED**.

**DONE AND ORDERED** this 11th day of March, 2019.


s/ *M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**